6 665<br>45 141

## Pauline A. Rawls, Tutrix, v. Daniel Rawls.

Parol evidence is inadmissible to prove a settlement and a release, by a minor, of the mortgage in his favor against his tutor. C. C. 3335.

The four years' prescription, by actions against tutors, by minors after their majority, does not run where a minor has died after his majority, but within the four years, leaving an infant child.

An estate cannot be considered vacant, unless the heirs are unknown, and no one claims; or unless the heirs have renounced it. The mere absence of a formal acceptance by the tutrix of a minor heir, does not cause the estate to be regarded as vacant. C. C. 1088.

RAWLS
*v.*
RAWLS.

APPEAL from the District Court of St. Mary, *Voorhies*, J. *Jules G. Olivier*, for plaintiff. *C. Roselius*, for defendant. The judgment of the court was pronounced by

PRESTON, J. On the 2d of July, 1831, *Daniel Rawls* was appointed by the probate court of the parish of St. Mary, tutor of his nephew, *Philip Alston Rawls*, a minor. His property consisted of an undivided interest in thirty-one negroes, owned jointly with another minor brother, of whom the defendant was also appointed tutor. The negroes were appraised at nine thousand five hundred and seventy dollars; and the defendant gave a special mortgage on property in the sum of fifteen thousand dollars, to secure his faithful administration, as tutor of those minors. By a decree of the court of probates, dated ———— ———— made upon the petition of the defendant, and the advice of a family meeting of the minors, he was directed to keep the slaves in kind, and hire them out at public auction in families, or together, on such terms as he might deem advisable; the hire to be secured by notes, with surety, bearing ten per cent interest from maturity until paid.

In 1839, the brother, *Job B. Rawls*, having arrived at the age of majority, claimed a partition of the slaves, which was made on the 11th of April, 1839, when they had increased to forty in number, and were appraised at twenty-two thousand dollars, being double their appraised value when the defendant was appointed tutor.

The same day, the major brother gave to the defendant a notarial discharge, as his tutor, declaring, that more than ten days before, his tutor had rendered to him a satisfactory account of his tutorship, and had handed over to him all the property and effects which came into his hands, as tutor. He appears to have remained satisfied with the administration and settlement of his tutor.

*Phillip Alston Rawls*, became of age on the 6th of November, 1844. Two months afterwards, on the 10th of January, 1845, the defendant rendered him a statement of the negroes, twenty-two in number, belonging to him, concluding with this remark: " The said tutor makes no charges of the expenses incurred for the said *Phillip A. Rawls*, during his minority, considering himself fully compensated for the same, by the services rendered to him by the said slaves;" and, thereupon, *Phillip A. Rawls* gave him the following acknowledgment: " I hereby acknowledge to have received the foregoing account, rendered to me by *Mr. Daniel Rawls*, my tutor, on the present day, together with the proper vouchers to substantiate the same. St. Mary, January 10, 1845. P. A. RAWLS."

*Phillip A. Rawls* does not appear, at any subsequent period, to have executed a formal discharge of his tutor, or to have raised the special mortgage given for his faithful administration; all of which was done by his elder brother, and the necessity of which was, therefore, known to the tutor. The receipt we have copied, was evidently a receipt for the account of the tutorship, such as it was, and for the vouchers, as required by the 355 article of the code. The discharge is one of those agreements, and, indeed, the principal one, which is prohibited by the code, until ten days have elapsed after the rendition of the account and delivery of the vouchers.

On this part of the case, a bill of exceptions presents a new and difficult question. The defendant offered witnesses, on the trial, to prove, by verbal testimony, the settlement and payment of his ward's claims, and his discharge as tutor. We think, with the district court, that the parol evidence was inadmissable. By the article 350 of the Civil Code, the tutor is bound to give an account

of his administration, at the expiration of his tutorship. A monied account must be a statement of debits and credits, in writing. So the legal mortgage against the tutor, can only be raised by the consent of the ward; which consent, the code declares, must be evidenced by a release or a receipt. Article 3335. Tutors and administrators of estates are appointed by courts, and act under their supervision; it has been the universal practice in the State, to furnish written accounts of their administration to the courts which appointed them, and to the persons for whom they administer, and to obtain written evidence of their discharge. The chapter in the Code of Practice, upon the settlement of successions, also seems to require written settlements and discharges. It is a matter of good policy to prevent litigation, and to afford muniments of title; and we cannot sanction, by admitting oral testimony, the departure from a practice so salutary. We think the parol evidence, that the defendant had settled his account, as tutor, and discharged the balance, was properly rejected.

*Phillip A. Rawls* was married about the time he became of age, to *Pauline A. Palant*; who died in ———————, leaving one child, of whom, the surviving mother has been duly appointed tutrix. On the 26th of March, 1849, she commenced this suit, on behalf of her minor heir, to recover the hire of the slaves, from the year 1831 until they were delivered to her late husband in 1845, with ten per cent interest on all sums, which had accumulated, annually, beyond five hundred dollars, after deducting all necessary and reasonable expenses.

The defendant has plead, that the action is prescribed by the prescription of four years, "against the action of the minor against his tutor, respecting the acts of the tutorship, to begin from the day of his majority." Code, art. 356.

The four years had not elapsed, between the 6th of November, 1844, when *Phillip A. Rawls* became of age, and the day of his death. His only heir was an infant minor. Now, it is laid down in the code, article 3488, that minors cannot be prescribed against, except in the cases provided by law.

The four years prescription, in favor of tutors against actions respecting their tutorship, is subject to the rule, because not excepted by any provision of law. Duranton, and other commentators in France, have certainly given a different interpretation to similar legislation in that country; but we do not feel at liberty, on that account, to disregard an express provision of our code. It is our duty to give effect to all its articles on the subject, if possible.

It is next urged that prescription runs against a vacant estate, and that the time (during which the deceased neglected to bring the suit, added to the time,) during which prescription run against his vacant estate, exceeds the four years prescription, which has been plead.

It is urged, most strenuously, that the estate of *Phillip A. Rawls* was a vacant estate, because not accepted by the tutrix of his minor child. Code, art. 345, 998. And that prescription runs against a vacant estate. Art. 3492. But our present code declares, that "a succession is called vacant, when no one claims it; or when all the heirs are unknown, or when all the known heirs to it have renounced it." Art. 1088. *Phillip A Rawls* died, leaving an only child, known as his only heir. His mother qualified as his tutrix, and was in possession of his property, as widow in community of his deceased ancestor. She had not renounced that estate, for herself or child, and was bound to administer it for him. Code, art. 327.

This case is different from that of *Poultney's Heirs* against *Cecil*, in which the surviving widow formally renounced the succession of her deceased husband for herself, and not only did not claim it for his heirs, but abandoned it, under an order

RAWLS
v.
RAWLS.

of court, to the syndics of the creditors of her husband. It is more analogous in principle, to the case of *Badon* v. *Badon*, in which this court held, that it was incumbent on those who plead prescription against a vacant estate, to show that the heirs had never taken possession of the same.

The amount allowed by the district court, for the services of plaintiff's slaves, is high, and more than we have allowed, under similar circumstances, but seems justified by the evidence.

The judgment of the district court is affirmed, with costs; without prejudice, however, to the claims, said to have been paid in Arkansas, on account of dower, which were not plead in the answer.